**Electronically Filed
Intermediate Court of Appeals
29368
23-NOV-2010
04:02 PM**

NO. 29368

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


CRISPIN G. BANTOY, Claimant-Appellant,
v.
ARAKAKI MECHANICAL LLC, and
HAWAII EMPLOYERS' MUTUAL INSURANCE COMPANY, INC.,
Employer/Insurance Carrier-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2005-396 (2-02-15248))


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Leonard, and Ginoza, JJ.)


In this workers' compensation case, Claimant-Appellant Crispin G. Bantoy (Bantoy or Claimant) asserts that he suffered a work-related injury to his back as a result of lifting heavy steel sound insulation panels or "noise panels." Employer-Appellee Arakaki Mechanical, LLC (Arakaki) and Insurance Carrier-Appellee Hawaii Employers' Mutual Insurance Company, Inc. (HEMIC) (collectively, the "Employer") denied Bantoy's claim for workers' compensation benefits and the Director of the Department of Labor and Industrial Relations (Director) ruled in favor of the Employer. Bantoy appealed the Director's decision to the Labor and Industrial Relations Appeals Board (LIRAB), which, on August 21, 2008, issued an "Order Granting [the Employer's] Motion for Summary Judgment" (Summary Judgment Order). Bantoy appeals from the LIRAB's Summary Judgment Order.

Bantoy described his back injury as occurring during the installation of noise panels, which was work he had been assigned by Arakaki to perform between October 2, 2002, and October 4, 2002. However, Bantoy initially identified the date of the accident as September 24, 2002, and later as September 27, 2002, dates on which he had performed work that did not require him to lift or install heavy panels.

The central issue in this case is whether the LIRAB abused its discretion in denying Bantoy's request to amend the date of the injury identified in the LIRAB's Pretrial Order from September 27, 2002, to October 4, 2002. Bantoy sought to amend the date of the injury to October 4, 2002, a date Bantoy was assigned to install noise panels, to match Bantoy's description of how the injury occurred. The LIRAB denied Bantoy's request to amend the Pretrial Order. The LIRAB then granted the Employer's motion for summary judgment on the ground that it was undisputed that no accident occurred on September 27, 2002.

We conclude that the LIRAB abused its discretion in denying Bantoy's request to amend the Pretrial Order to reflect a date for the injury that corresponded with Bantoy's description of how his injury occurred. Accordingly, we vacate the Summary Judgment Order and remand the case for further proceedings.

I. BACKGROUND

A.

Bantoy worked for Arakaki as a welder. According to Bantoy, his job often required him to lift and work with heavy metallic panels. During the times relevant to this appeal, Bantoy worked for Arakaki at two different job sites on Maui. From about September 23, 2002 to September 27, 2002, Bantoy worked on a "pipe job" that did not involve lifting of heavy panels for Hawaiian Commercial & Sugar Company at Puunene Sugar Mill. From October 2, 2002, to October 4, 2002, Bantoy worked on a job for Maui Electric Company, Ltd. (Maui Electric) at the Maui Electric Plant in Ma'alaea.

2

The work for Maui Electric required Bantoy and his co-workers to install steel sound insulation panels. Bantoy claimed that the panels weighed 400 to 500 pounds each and that the installation required the workers to lift the heavy panels and carry them a distance of twenty feet before installing them. According to Bantoy, he suffered a lower back injury from lifting the 400 to 500 pound panels at the Maui Electric job site. Bantoy performed the installation work on October 2, 3, and 4, 2002. Bantoy asserts that he stopped working on October 4, 2002, because he thought he had aggravated a pre-existing back injury and needed to see his doctor for the pain he was experiencing.

After working five hours on the morning of October 4, 2002, which was a Friday, Bantoy asked to leave work early. Bantoy took a flight home to Oahu from Maui and went to see his treating physician, Charlie Sonido, M.D., in the afternoon on October 4, 2002. Bantoy complained to Dr. Sonido of low back pain during his October 4, 2002, visit. Bantoy also saw Dr. Sonido on October 8, and 10, 2002. Dr. Sonido's notes regarding the October 10, 2002, visit indicate that Bantoy reported experiencing low back pain on September 27, 2002, when he and four others lifted a panel board weighing 400 pounds.

Bantoy had previously injured his lower back on August 9, 2000, while working for Arakaki. Dr. Sonido had treated Bantoy for the August 2000 lower-back injury. Dr. Sonido's notes for the October 4, 2002, visit indicate that Bantoy had exacerbated his pre-existing lower back injury, and Dr. Sonido's notes for the October 8, 2002, visit reflect an apportionment of Bantoy's condition as 90 percent for the "new" injury and 10 percent for the "old" injury. Dr. Sonido signed a Disability Certificate for Bantoy for the period October 7, 2002 to October 14, 2002, because Bantoy was "totally incapacitated" during that time, and Dr. Sonido authorized Bantoy to return to "light" work on October 15, 2002. Bantoy returned to work at the Maui Electric job site on October 15, 2002.

3

B.

On November 1, 2002, Bantoy filled out a Form WC-1, "Employer's Report of Industrial Injury," which described how the accident occurred as "lifting noise panel" and what the employee was doing when injured as "installing panel." On this WC-1, the "DATE OF INJURY/ILLNESS" section was left blank and the "DATE INJURY/ILLNESS REPORTED" was scratched out. The incomplete WC-1, signed by Bantoy, was sent to HEMIC by Akira Watanabe, the insurance agent for Arakaki. Sometime after Watanabe sent the form to HEMIC, an injury date of September 24, 2002, and an injury report date of November 1, 2002, was filled in. It is unclear who filled in the date of injury.

On November 26, 2002, Derrick Arakaki, Arakaki's owner, faxed a letter to a claims specialist for HEMIC which attached Bantoy's time sheet for September 24, 2002. The letter indicated that this time sheet showed that Bantoy was working at the Hawaiian Commercial & Sugar Company job site, and "not at Maui Electric that Bantoy has on his WC-1."[1] The Employer denied Bantoy's workers' compensation claim pending further investigation.

On April 4, 2003, Kimberly Likewise (Likewise), a HEMIC representative, took a recorded statement from Bantoy. Bantoy explained that he had been injured while working for Maui Electric at Maʻalaea while "carry[ing] the silencer door, about four hundred pounds, . . . about ten pieces of that." Bantoy stated that the "silencer door" was used "[f]or the wall, for make the wall so no more noise." Bantoy indicated that after he finished carrying the heavy silencer doors, Bantoy felt pain and asked the foreperson around noon if Bantoy could go home. Bantoy did not tell the foreperson why he wanted to leave early because he was in a hurry to catch a plane home. According to Bantoy,

---

[1] The time sheet attached to the letter was for September 24, 2002, but the letter erroneously referred to the date of the attached time sheet as "11-24-2002." In addition, the WC-1 filled out by Bantoy did not refer to Maui Electric or the location at which Bantoy's alleged injury occurred.

after returning home, he went to see Dr. Sonida and missed work for a week because of his injury.

During the interview, Likewise asked Bantoy if the injury occurred on September 24, 2002, and Bantoy responded "yes." In response to Likewise's asking if this was a Tuesday, Bantoy also replied in the affirmative.[2/]

| | |
|---|---|
| [Likewise]: | Okay; I'm gonna ask about this injury, yeah? It occurred on September 24, 2002, is that correct? |
| Mr. Bantoy: | Yes, ma'am. |
| [Likewise]: | Okay. Do you remember what day of the week that was? If you don't, that's fine. |
| [Bantoy's attorney]: | Do you remember what day? |
| Mr. Bantoy: | [UNINTELLIGIBLE] |
| [Likewise]: | So it was a Tuesday? |
| Mr. Bantoy: | Yes, Tuesday, ma'am. |
| [Likewise]: | Tuesday? Did it happen in the morning -- oh, no, the afternoon? The afternoon, huh? |
| Mr. Bantoy: | Yes, ma'am. |

At HEMIC's request, Bantoy underwent an independent medical examination conducted by Dr. John Endicott, M.D., on March 6, 2003. Dr. Endicott's report describes how the "subject injury of 9/24/02 occurred" as follows: "[Bantoy] and three other co-workers were required to lift some extremely heavy soundproofing panels . . . . They had to lift them through to the inside of the structure and hang them. [Bantoy] reports that he had increasing pain over the next two days, and then had severe pain in which he had to call in, and missed work for one week. He returned to see Dr. Sonido on 10/4/02." Dr. Endicott

---

[2/] September 24, 2002, was a Tuesday.

diagnosed Bantoy as having "[c]hronic discogenic low back pain," which had been aggravated.    Dr. Endicott further opined:

> It appears that [Bantoy] has aggravated his underlying disc condition with the injury on 9/24/02.  He now has more persistent left radicular symptoms, positive nerve tension signs, diffuse weakness, no atrophy, and history of bladder control problems.  Given the significance of the disc herniation noted on the CT scan from August 2001, it appears that he may have sustained further herniation of the disc and further compression of the thecal sac.  This needs to be clarified.
>
> The prognosis would be guarded at present . . . .
>
> The etiology of his current symptoms appears to be related to the aggravation from 9/24/02 and the worsening of symptoms.

On November 12, 2004, Bantoy completed a Form WC-5, "Employee's Claim for Workers' Compensation Benefits."  The WC-5 described how the accident occurred as "lifting noise panel wieghing [sic] 400 to 500 lbs. with 3 co-workers."  It identified the "Date of Accident" and "Date Disability Began" as September 24, 2002.

### C.

A hearing on Bantoy's claim was held before the Disability Compensation Division of the Department of Labor and Industrial Relations (DCD-DLIR) on July 26, 2005.  At the hearing, Arakaki established through its time sheets that Bantoy was not working at the Maui Electric job site, where he claimed to have been injured, on September 24, 2002.  Bantoy was emphatic that his injury occurred on a Friday and was certain that it occurred while he was working at the Maui Electric job site. Bantoy requested that the date of the injury be changed to September 27, 2002, which was a Friday.[3]  By letter dated August 24, 2005, to the DCD-DLIR hearings officer, Arakaki established through its time sheets that on September 27, 2002,

---

[3] September 24, 2002, the date listed on Bantoy's WC-5 as the date of the accident was a Tuesday.  September 27, 2002, was a Friday.  October 4, 2002, the date Bantoy subsequently sought to identify as the date of the accident before the LIRAB, was also a Friday.

Bantoy was working at the Hawaiian Commercial & Sugar Company job site, and not at the Maui Electric job site.

In a decision dated September 20, 2005, the Director found that Arakaki's time sheets established that Bantoy could not have suffered a work-related injury on September 27, 2002, because he was not at the Maui Electric job site on that date. On that basis, the Director denied Bantoy's claim for compensation.

D.

Bantoy appealed the Director's decision to the LIRAB. In his Initial Conference Statement to the LIRAB, Bantoy asserted that he had been injured "on or about September 27, 2002," as a result of "lifting and hanging metallic panels that weighted about 400-500 pounds" with three co-workers. Bantoy identified the issues as:

1.    What is the date of accident.

2.    Did Claimant incur a work related injury on September 27, 2002.

3.    Did Claimant incur a work related [sic] at Maui Electric on or about September 27, 2002.

The LIRAB issued a Pretrial Order on December 14, 2005, which stated that "[t]he sole issue to be determined is whether Claimant sustained a personal injury on September 27, 2002, arising out of and in the course of employment." (Emphasis added.)

On October 6, 2006, five days prior to the then-scheduled trial before the LIRAB, Bantoy filed a "Motion to Amend Date of Injury in Conformance with Evidence" (Motion to Amend). In the Motion to Amend, Bantoy asked, pursuant to Hawaii Administrative Rules (HAR) § 12-47-22 (1994),[4] to change the

---

[4] HAR § 12-47-22(c) provides:

(c)  The pretrial order shall control the subsequent course of the appeal, unless modified by the [LIRAB] at the trial or prior thereto to prevent manifest injustice. The pretrial order shall supersede the pleadings where there is any conflict and shall supplement the pleadings in all other respects.

7

date of injury in the Pretrial Order to October 4, 2002, "to prevent manifest injustice." Bantoy argued that HEMIC knew that his claim was for injuries sustained while installing noise panels; that HEMIC "[u]pon information and belief" was responsible for inserting September 24, 2002, as the date of injury on the WC-1; that HEMIC continued to use the "wrong" date for the injury even after learning the date was wrong; and that the date of injury must be corrected in conformance with the evidence to avoid manifest injustice in the case.

Although the trial had originally been scheduled for October 11, 2006, the LIRAB set the hearing on Bantoy's Motion to Amend for November 16, 2006, thus effectively continuing the trial. On November 20, 2006, the LIRAB filed an "Order Denying Motion to Amend Date of Injury" (Order Denying Motion to Amend), which denied Bantoy's Motion to Amend.

The LIRAB subsequently issued amended pretrial orders which continued the trial date, first to October 30, 2007, and then to August 25, 2008, but did not change the issue to be determined. On August 12, 2008, the Employer filed a Motion for Summary Judgment (Summary Judgment Motion), arguing that there was no issue of material fact as to whether an injury occurred on September 27, 2002, because Bantoy's filings "clearly state that no injury occurred on September 27, 2002." On August 21, 2008, the LIRAB granted the Employer's Summary Judgment Motion "on the grounds that the December 14, 2005, Pretrial Order identifies an accident date of September 27, 2002, and the parties are both in accord that no accident occurred on that date."

II. DISCUSSION

A.

On appeal, Bantoy asserts:

The [LIRAB] abused its discretion by granting summary judgment in violation of the law as there remains issues of material fact remaining in this case as follows:

8

A.      The Hawaii Administrative Rules, Section 12-47-22(c), states that:

[t]he pretrial order shall control the subsequent course of the appeal, unless modified by the board at the trial or prior thereto to prevent manifest injustice.

B.      An issue of material facts exists as the claim is presumed to be a compensable claim based on Section 386-85, Hawaii Revised Statutes, as amended.

C.      An issue of material facts remain as to whether the trier of facts would deny compensability if it finds that HEMIC was solely responsible for the wrong date and wrongfully perpetuated the use of the wrong date.

D.      An issue of material facts remains as to whether the trier of facts would deny compensability, if it found that the wrong date inserted in the Pretrial-Order, was placed by the [LIRAB] officer as a place holder until the correct date was found after further discovery.

B.

We conclude that the decisive issue presented by this appeal is whether the LIRAB abused its discretion in denying Bantoy's Motion to Amend which sought to amend the date of the injury in the Pretrial Order to October 4, 2002, to conform with Bantoy's description of how he was injured. We hold that the LIRAB abused its discretion in denying Bantoy's Motion to Amend.

The record demonstrates that the Employer had clear notice that Bantoy was claiming workers' compensation benefits for a back injury he sustained as the result of lifting heavy noise panels and that he was engaged in installing noise panels while working on a job for Maui Electric at the Maui Electric Plant in Maʻalaea. There does not appear to be any dispute that Bantoy was engaged in lifting and installing noise panels between October 2 and 4, 2002, while performing his job as a welder for Arakaki. The record also contains ample evidence that after October 4, 2002, Bantoy was suffering from an injury to his back.

Hawaiʻi's workers' compensation law establishes a presumption that an employee's claim for compensation is for a covered work injury which the employer has the burden of

9

rebutting. Hawaii Revised Statutes (HRS) § 386-85(1) (1993) provides that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim is for a covered work injury[.]" The Supreme Court of Hawai'i has determined that

> HRS § 386-85(1) creates a presumption in favor of the claimant that the subject injury is causally related to the employment activity. . . . [T]his presumption imposes upon the employer both the heavy burden of persuasion and the burden of going forward with the evidence. The claimant must prevail if the employer fails to adduce substantial evidence that the injury is unrelated to employment. The term "substantial evidence" signifies a high quantum of evidence which, at the minimum, must be "relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable man that an injury or death is not work connected."
>
> The statute nowhere requires . . . some preliminary showing that the injury occurred "in the course of employment" before the presumption will be triggered. Rather, HRS § 386-85 clearly dictates that coverage will be presumed at the outset, subject to being rebutted by substantial evidence to the contrary.

Flor v. Holguin, 94 Hawai'i 70, 79, 9 P.3d 382, 391 (2000) (citations omitted) (quoting Chung v. Animal Clinic, Inc., 63 Haw. 642, 650-51, 636 P.2d 721, 726-27 (1981)).

Moreover, although HAR § 12-47-22 sets out certain pretrial procedures and HAR § 12-47-22(c) states that a pretrial order "shall control the subsequent course of the appeal," HAR § 12-47-22(c) also importantly provides that the LIRAB may modify a pretrial order "at the trial or prior thereto to prevent manifest injustice." (Emphasis added.) Thus, while ensuring an orderly process is important and within the LIRAB's discretion, the LIRAB may, even during trial, modify pretrial orders in consideration of the substantive rights of the parties.

Under the circumstances of this case, we conclude that the LIRAB abused its discretion in denying Bantoy's Motion to Amend which sought to amend the Pretrial Order to change the date of injury to October 4, 2002. Granted, Bantoy initially asserted an incorrect injury date and did not seek to amend the LIRAB's

Pretrial Order until five days before the originally-scheduled trial date. However, a trial continuance was already apparent by the time the LIRAB ruled on the Motion to Amend, and the LIRAB's granting of the motion would not have unfairly prejudiced the Employer. The LIRAB's denial of Bantoy's Motion to Amend was improper, especially when viewed in light of the statutory presumption that a workers' compensation claim is for a covered work injury. The amendment requested by Bantoy was necessary to conform the date of the alleged injury with the long-standing and consistent substance of Bantoy's claim -- that he was injured as the result of lifting heavy panels on a job for Maui Electric.

Based on Bantoy's consistent description of how he was injured, it was clear that the date of injury identified in the Pretrial Order was wrong. There was no dispute that on September 27, 2002, the date of injury listed in the Pretrial Order, Bantoy had not been engaged in lifting heavy panels, had not been working on a Maui Electric job, and had not sustained an injury. Thus, it was a foregone conclusion that the LIRAB's denial of Bantoy's motion to amend the injury date identified in the Pretrial Order would result in the denial of Bantoy's claim.

The LIRAB erred in basing its denial of Bantoy's claim for benefits on the date of the injury identified in the Pretrial Order, which Bantoy advised the LIRAB was wrong, rather than on the substance of Bantoy's claim of how the injury occurred. The effect of the LIRAB's denial of Bantoy's Motion to Amend was to deny Bantoy a fair hearing on the merits of his claim that he sustained a compensable back injury while working for Arakaki.

III.    CONCLUSION

For the foregoing reasons, we vacate the LIRAB's August 21, 2008, Summary Judgment Order, and we remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, November 23, 2010.

On the briefs:

Alex M. Sonson
for Claimant-Appellant

Jeffrey H.K. Sia
Diane W. Wong
(Ayabe, Chong, Nishimoto,
   Sia & Nakamura)
for Employer/Insurance
   Carrier-Appellees

Chief Judge

Associate Judge

Associate Judge

12